STATE of Iowa, Appellee,

v.

Clyde H. STARKEY, Jr., Appellant.

No. 88–659.

Supreme Court of Iowa.

March 22, 1989.

Raymond E. Rogers, Acting Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Sarah J. Coats, Asst. Atty. Gen., Paul L. Martin, County Atty., and Candila C. Schickel, Asst. County Atty., for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

In this single issue appeal, we are called upon to decide whether our criminal restitution statute applies to a hit-and-run conviction. The district court decided it did. Under the facts in this case, we disagree and reverse.

In the early morning of April 25, 1987, Debra Shapley's car was parked along a highway in Cerro Gordo County as she changed a tire. Clyde H. Starkey, Jr., who had been drinking, hit her with his car and continued into nearby Floyd County without stopping. There, he was arrested and charged with operating while intoxicated. *See* Iowa Code § 321J.2 (1987). He ultimately pleaded guilty to second-offense OWI and was sentenced to two years of incarceration.

Starkey was charged in Cerro Gordo County with leaving the scene of a personal injury accident. *See id.* §§ 321.261, 321.-263. He pleaded guilty to the charge and was sentenced to one year of incarceration, to be served concurrently with the Floyd County OWI sentence. No restitution was ordered in the original sentence for the leaving-the-scene conviction, but Starkey was ordered to pay court costs.

The State filed an application asking the district court to amend its judgment to include restitution. Starkey filed a resistance. At the hearing on the matter, Shapley's testimony revealed that her right leg had had to be amputated as a result of the accident and that she would have to undergo continuing medical treatment. Her medical expenses at the time of the hearing amounted to over $195,000, not including expenses paid out of the state's Victim Reparation Fund. *See id.* § 912.2.

The district court concluded that its judgment should be amended to include restitu-

tion for both court costs and Shapley's medical expenses. It reasoned that because of Starkey's criminal failure to stop and render aid to Shapley after striking her, he had caused her to suffer pecuniary damages.

Starkey has now appealed to this court, arguing that he should not have been ordered to pay restitution to Shapley because her damages were not caused by his leaving the accident scene but by the accident itself. Starkey does not challenge the restitution provision regarding court costs.

We review the district court's judgment to correct errors of law. *State v. Akers,* 435 N.W.2d 332, 333 (Iowa 1989).

The crime for which Starkey was ordered to pay restitution, leaving the scene of a personal injury accident, is governed by Iowa Code sections 321.261 and 321.263, and is a serious misdemeanor. Section 321.261(1) provides in part:

The driver of any vehicle involved in an accident resulting in injury to ... any person shall immediately stop the vehicle at the scene of the accident or as close as possible and if able, shall then return to and remain at the scene of the accident in accordance with section 321.263.

Section 321.263 provides in part:

The driver of any vehicle involved in an accident resulting in injury to ... any person ... shall give [certain information] to the person struck ... and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to [a doctor or hospital] if it is apparent that such treatment is necessary....

Restitution is governed by chapter 910 of the Iowa Code. In most criminal cases, "the sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities." Iowa Code § 910.2. "Restitution" is defined, in part, as "payment of pecuniary damages to a victim in an amount and in the manner provided by the offender's plan of restitution." *Id.* § 910.1(4). "Victim" is defined as "any person who has suffered pecuniary damages *as a result of* the of-

fender's *criminal activities.*" *Id.* § 910.1(1) (emphasis added). "Pecuniary damages" are defined as "*all damages* to the extent not paid by an insurer, *which a victim could recover against the offender in a civil action arising out of the same facts or event,* except punitive damages and damages for pain, suffering, mental anguish, and loss of consortium." *Id.* § 910.1(2) (emphasis added).

We think the defendant correctly interprets the italicized portions of sections 910.1(1) and 910.1(2) as requiring a causal connection between the conduct for which the defendant is convicted and the damages the victim suffers. The definitions of "victim" and "pecuniary damages" are straightforward and unambiguous. The words "as a result of" in the definition of "victim" clearly connote causation. And, the words "all damages ... which a victim could recover against the offender in a civil action arising out of the same facts or event" clearly connote a requirement that the victim prove a prima facie case of liability premised on some civil theory such as fault or intentional tort. Proximate cause, of course, would be a necessary element of such a prima facie case.

Other jurisdictions have similarly applied their criminal restitution statutes in hit-and-run cases. *See, e.g., People v. Corners,* 176 Cal.App.3d 139, 148–49, 221 Cal. Rptr. 387, 393 (1985) (statute requires restitution for "persons who suffer losses as a result of criminal activity"; causal relationship required); *State v. Williams,* 520 So. 2d 276, 277 (Fla.1988) (statute requires restitution for "damage or loss caused directly or indirectly by the defendant's offense"; causal relationship required); *State v. Eastman,* 51 Or.App. 723, 725–26, 626 P.2d 956, 958 (1981), *aff'd,* 292 Or. 184, 637 P.2d 609 (1981) ("victim" defined as any person who has "suffered pecuniary damages as a result of defendant's criminal activities"; "pecuniary damages" defined as all special damages "which a person could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's criminal activities"; causal relationship required); *Commonwealth v.*

*Cooper,* 319 Pa.Super. 351, 354–57, 466 A.2d 195, 196–98 (1983) (statute requires defendant to make restitution where victim suffered personal injury "directly resulting from the crime"; causal relationship required); *State v. Hartwell,* 38 Wash.App. 135, 138–40, 684 P.2d 778, 779–80 (1984) (restitution may be ordered for "persons who may have suffered loss or damage by reason of the commission of the crime in question"; causal relationship required). *But see, e.g., People v. Walmsley,* 168 Cal. App.3d 636, 640, 214 Cal.Rptr. 170, 172–73 (1985) (decision apparently conflicts with *Corners; Walmsley* later limited by *People v. Lafantasie,* 178 Cal.App.3d 758, 764, 224 Cal.Rptr. 13, 17 (1985)) (guilty plea to leaving-the-scene charge sufficient to justify restitution); *Kingston v. State,* 479 N.E.2d 1356, 1358–59 (Ind.App.1985) (owners of parked cars damaged in accident were victims of leaving-the-scene offense); *State v. Boudreaux,* 484 So.2d 160, 164 (La.App.1986) (restitution may be ordered in hit-and-run case without a determination of fault; guilty adjudication triggers restitution provision).

It is clear from the language of our hit-and-run statutes that the legislature had two objectives. One was to require immediate assistance for injured persons. The other was to prevent people from avoiding liability for their acts by leaving the scene without identifying themselves. *Cf. Hartwell,* 38 Wash.App. at 140, 684 P.2d at 780.

There is no evidence here that Starkey's act of leaving the scene, the basis of the charge, either caused or aggravated the victim's injuries. The only inference supported by the record is that Shapley's injuries occurred before Starkey committed the offense with which he was charged: leaving the scene of an accident.

Had Starkey obeyed the law and remained, Shapley's injuries, as far as this record is concerned, would have been the same. Starkey's act of leaving the scene did not cause the victim's injuries. The damages occurred independently of Starkey's crime.

The State has offered various theories under which the restitution award could be justified. We reject the State's theories because they would require us to find that the clear language of the restitution statutes is ambiguous. We have already determined that the language is not ambiguous. Our inquiries thus must stop there. *See Saadiq v. State,* 387 N.W.2d 315, 319 (Iowa 1986).

Absent any evidence that Shapley suffered pecuniary damages as a result of the hit-and-run offense of which Starkey was convicted, the district court should not have ordered restitution for her medical expenses. Because of this error, we reverse the portion of the district court's decision that orders restitution to Shapley in the amount of $195,000. The portion of the court's decision ordering restitution to Cerro Gordo County for court costs in the amount $477.33 is affirmed, however.

AFFIRMED IN PART AND REVERSED IN PART.