**STATE of Iowa, Appellee,**

v.

**John Richard BONSTETTER, Appellant.**

No. 00–2044.

Supreme Court of Iowa.

Dec. 19, 2001.

John R. Sandre of Coppola, Sandre, McConville & Carroll, P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Ron Robertson, County Attorney, and Stephen Lickiss, Assistant County Attorney, for appellee.

STREIT, Justice.

A cooperative executive seeks bonus and 401K benefits accrued during the time he was stealing from his employer. John Richard Bonstetter appeals the district court's denial of this claim and order of restitution resulting from his conviction of first-degree fraudulent practice and forgery. Specifically, Bonstetter challenges the trial court's denial of his request to offset damages allegedly owed him by his victim. He further challenges the district court's inclusion of the cost of an audit in the restitution order. We find the district court was correct in not allowing Bonstetter's claim against his victim. Further, while the costs of an audit are certainly recoverable, the State failed to offer sufficient proof of this audit as an item of damage. We affirm in part, reverse in part, and remand.

## I. Background Facts

Bonstetter converted over $422,000 from his employer, NEW Cooperative, for private use. In 1992 Bonstetter became director of finance at NEW Cooperative. In 1997 he was promoted to the position of grain market manager and assistant general manager. In these capacities, Bonstetter had authority to issue checks without prior authorization from anyone in the company. During these years, through a series of eleven fraudulent-check transactions, Bonstetter converted the money from his employer.

In 2000, Bonstetter pled guilty to first-degree fraudulent practice and forgery. The district court sentenced Bonstetter to five and ten-year consecutive indeterminate terms of incarceration. The sentences were suspended. Bonstetter repaid $463,597. The State sought to recover restitution for lost profits, audit fees, and attorney fees. During the hearing on damages, the State presented a bill from the auditor for $19,763. Bonstetter testified as part of his compensation package he was entitled to a bonus if he reached certain goals. He claimed he reached the goal prior to resignation and therefore was entitled to the bonus. Bonstetter also sought accrued vacation and 401K benefits. The total amount of these accrued benefits was $54,812. The court ordered Bonstetter to pay $89,318 for lost profits and $19,763 in audit costs. Bonstetter received credit for $21,386 against these amounts for the restitution he previously overpaid.

On appeal, Bonstetter contends he should have been given an offset for the money NEW Cooperative owes him. He also contends the audit fees should not have been included in the restitution order as there was no evidence in the record as to what services were rendered or whether the fees were necessary, fair, and reasonable.

## II. Scope of Review

██ Bonstetter claims he should be allowed an offset as part of the statutory scheme for restitution. We resolve this issue by our rules of statutory construction. We normally construe statutes on the basis of their ordinary and commonly understood meanings. *State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991). We will not search for a different meaning when the statutory language is clear. *Id.*

■ Our review is at law as to Bonstetter's claim the court erred in including the audit fees in the restitution order. *State v. Watts*, 587 N.W.2d 750, 751 (Iowa 1998) ("[r]estitution orders are reviewed for errors at law"). The court's findings of fact have the effect of a special verdict. *See* Iowa R.App. P. 4. When reviewing the restitution order, we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law. *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999) (quoting *Johnson v. Dodgen*, 451 N.W.2d 168, 171 (Iowa 1990)).

### III. The Merits

### A. Offset in the Restitution Order

■ Bonstetter claims NEW Cooperative owes him monies for a bonus, accrued vacation time and salary, and benefits from his 401K plan. It is not clear if he sought extra bonus money for the increased profits from his repayment of the money he stole. At sentencing, the trial court denied Bonstetter's request for such monies.

■ Before we turn to the merits of this issue, we first briefly explore the concept of criminal restitution. The word "restitution" connotes restoring or compensating the victim for loss. 24 C.J.S. *Criminal Law* § 1771, at 428 (1999). Unlike other forms of penal sanctions, restitution forces the offender to answer directly for the consequences of his or her actions. *See State v. Kluesner*, 389 N.W.2d 370, 372–73 (Iowa 1986). The rationale of restitution under criminal law is similar to the rationale of tort under civil law. *See State v. Mayberry*, 415 N.W.2d 644, 645–46 (Iowa 1987). "A wrong has been done. A person has been injured or property damaged. The victim deserves to be fully compensated for the injury by the actor who caused it." *State v. Ihde*, 532 N.W.2d 827, 829 (Iowa Ct.App.1995) (citing *Mayberry*, 415 N.W.2d at 645–46). Since restitution is a penal sanction separate from civil remedies, it makes it possible to avoid the necessity of a separate civil action and ensures the efficient use of time and resources in the sentencing process. Matthew Spohn, Note, *A Statutory Chameleon: The Mandatory Victim Restitution Act's Challenge to the Civil/Criminal Divide*, 86 Iowa L.Rev. 1013, 1034 (2001).

■ As a general rule, restitution depends on the existence of a crime for which the offender was convicted. 24 C.J.S. *Criminal Law* § 1774, at 431. In Iowa, restitution shall be ordered in all criminal cases in which the defendant pleads guilty or is found guilty. *See* Iowa Code § 910.2 (1999); *Teggatz v. Ringleb*, 610 N.W.2d 527, 529 (Iowa 2000); *Watts*, 587 N.W.2d at 751 (restitution is mandatory in all criminal cases in which the defendant pleads guilty). After conviction, the court must identify the "victim" entitled to restitution. Wayne R. LaFave, *Criminal Procedure* § 26.6(c), at 801 (2d ed.1999). A victim is "a person who has suffered pecuniary damages as a result of the offender's criminal activities." Iowa Code § 910.1(5).

■ Once the victim is identified, the court must determine what losses may be considered in calculating the amount of restitution. Any damages that are causally related to the criminal activities may be included in the restitution order. 24 C.J.S. *Criminal Law* § 1776, at 432. Damages not causally related to the crime are improper. *Id.* A restitution order is not excessive if it bears a reasonable relationship to the damage caused by the offender's criminal act. *Ihde*, 532 N.W.2d at 829.

The relationship must be shown by a preponderance of the evidence. Iowa Code § 910.2.

■ A court is authorized to order criminal restitution pursuant to the statutes. 24 C.J.S. *Criminal Law* § 1771, at 428. In the absence of such statutes, the court has no power to issue a restitution order. *Id.* The sentencing judge performs two functions in entering a restitution order. *Ihde,* 532 N.W.2d at 829. First, the judge determines the damage caused by the defendant's actions. *Id.* Second, the judge fashions a reasonable method of payment. *Id.*

■ Restitution serves multiple purposes. It compensates the victim. *Teggatz,* 610 N.W.2d at 529 ("the purpose of restitution is to protect the public by compensating victims of criminal activity"). It is rehabilitative in nature. "Restitution goes beyond revenue recovery and is designed to instill responsibility in criminal offenders." *State v. Izzolena,* 609 N.W.2d 541, 548 (Iowa 2000). When the court orders restitution, it must consider the appropriate goal of restitution desired in the particular circumstances of the case before it.

■ In reviewing a restitution award, we must determine if the trial court applied the correct law in fixing damage. *State v. Petrie,* 478 N.W.2d 620, 622 (Iowa 1991). We must also consider whether there is substantial evidence supporting the damages awarded. *See State v. Kaelin,* 362 N.W.2d 526, 528 (Iowa 1985). The district court is confined to the statute in determining what damages to include in the restitution order.

In this case the trial court determined the amount of restitution under Iowa Code chapter 910. This chapter provides, in part:

[T]he sentencing court shall order that restitution be made by each offender to the victims of the offender's criminal activities, to the clerk of court for fines, penalties, ... and, to the extent that the offender is reasonably able to pay, ... court costs ..., court-appointed attorney's fees, or the expense of a public defender when applicable...."

Iowa Code § 910.2.

■ The trial court denied Bonstetter's request for an offset because the statute does not authorize a reduction of the damages by a claimed offset by the criminal defendant. The trial court correctly applied the rule of strict statutory construction. The restitution statute in Iowa Code chapter 910 is a penal statute and must be interpreted strictly. *See White v. Iowa Dep't of Transp.,* 407 N.W.2d 606, 608 (Iowa 1987) (in statutes relating to a penal sentence, we apply rules of strict construction). The court must determine the legislative intent, considering the language in the statute, the object sought to be accomplished, and the evil sought to be remedied. *State v. Akers,* 435 N.W.2d 332, 334 (Iowa 1989) (citing *Brown v. John Deere Waterloo Tractor Works,* 423 N.W.2d 193, 195 (Iowa 1988)). Strict statutory construction is not to be used to inject doubt when legislative intent is evident through a reasonable construction of the statute. Iowa Code § 4.1(38) (when statute contains no technical terms or terms with particular legal meaning, its language must be construed "according to the context and the approved usage of the language"); *White,* 407 N.W.2d at 608.

The obvious purpose of Iowa Code chapter 910 is to compensate the victim and serve the functions of deterrence and rehabilitation of the offender. To advance this purpose, the legislature has enacted criminal sanctions that must be ordered by the sentencing judge in accordance with the

statute. The statute provides, "[r]estitution means payment of pecuniary damages to a victim in an amount and in the manner provided by the offender's plan of restitution." Iowa Code § 910.4. Pecuniary damages are "all damages to the extent not paid by an insurer, which a victim could recover against the offender in a civil action arising out of the same facts or event, except punitive damages...." *Id.* § 910.1(3).

*Inclusio unius est exclusio alterius,* the maxim of statutory construction that the inclusion of one is the exclusion of the other, has force in this case. Under this principle, any other types of damages not outlined in the statute are not recoverable. The statute does not confer authority in the district court to include an offset in a restitution order. The only exception is an allowance for an offset for amounts paid the victim by insurance. *Id.* § 910.1(2). Other than this exception, the restitution statute clearly excludes from the consideration of the district court the discretion to include an offset in a restitution order. There is no suggestion by the legislature that this statute extends to protect the criminal offender by allowing an offset other than in the insurance context. Such a construction would not comport with the purpose of the statute, and is an unreasonable interpretation.

 To hold otherwise would reward a lawbreaker by providing a forum to litigate freely all the various claims against the victim. The purpose of the restitution order is to compensate the victim for losses caused by the defendant's criminal activity—not to address civil claims such as the one before us. Because we find the district court correctly applied the law in excluding the requested offset from the restitution order, we affirm.

## B. Cost of the Audit

The State requested the district court include the cost of an audit in the restitution order. The State offered an exhibit specifying NEW Cooperative's calculation of damages. The exhibit included the cost of the audit in the total damages calculation. Over a hearsay objection, the court admitted the exhibit and later ordered Bonstetter to pay an additional $19,763 to cover the cost of the audit. Bonstetter argues the district court erred in including the audit in the restitution order. He claims there was no evidence to establish the fee was necessary, fair, or reasonable. The State argues Bonstetter failed to preserve error because he did not lodge the proper objection before the trial court, *i.e.* Bonstetter did not argue there was no evidence the costs of the audit were reasonable and necessary.

 In general, matters not raised in the trial court will not be considered for the first time on appeal. *State v. Morehouse,* 316 N.W.2d 884, 886 (Iowa 1982). However, in a bench trial, a defendant is not required to challenge the sufficiency of the evidence in the district court to preserve error for appeal. *See State v. Anspach,* 627 N.W.2d 227, 231 (Iowa 2001) (citing *State v. Abbas,* 561 N.W.2d 72, 74 (Iowa 1997)). Therefore, it was not necessary for Bonstetter to object to the inclusion of the audit in the restitution order or raise the point by way of a post-trial motion.

Bonstetter filed a "motion for new trial, motion for reconsideration, and motion to correct sentence." In the motion, Bonstetter specifically identified the nature of his challenge to the restitution order. At the time the State filed its resistance to Bonstetter's motion, it had the opportunity to specifically state the evidence supporting the inclusion of the audit. However, the State resisted the motion simply by deny-

ing "all allegations of errors or improprieties in the sentencing of Defendant and of the amount of restitution ordered." Even though Bonstetter was not required to challenge the sufficiency of the evidence to support the inclusion of the audit, he alerted the court to the issue, and the court had occasion to correct any errors in the sentence. In its order, the court found "the restitution amount Ordered fairly reflect [sic] the amounts owing pursuant to Chapter 910."

In calculating a restitution order, the district court must find a causal connection between the established criminal act and the injuries to the victim. *State v. Holmberg*, 449 N.W.2d 376, 377 (Iowa 1989). The damage must have been caused by the offender's criminal act to justify the restitution order. *Ihde*, 532 N.W.2d at 829. Once the causal connection is established by a preponderance of the evidence, "the statute allows recovery of 'all damages'... which the state can show by a preponderance of the evidence." *Id.* (quoting *Holmberg*, 449 N.W.2d at 377). A restitution order is not excessive "if it bears a reasonable relationship to the damage caused." *Mayberry*, 415 N.W.2d at 647. In the criminal context, failure of the State to satisfy its burden of proof as to damages does not preclude pursuit of civil recovery for the costs of an audit.

Under our statute, a restitution order may properly include all damages to the extent not paid by an insurer, which the victim could recover against the offender in a civil action arising out of the same facts or event. Iowa Code § 910.1(2).[1] The present case is similar to *State v. Taylor*, 506 N.W.2d 767 (Iowa 1993) and *State v. Hollinrake*, 608 N.W.2d 806 (Iowa Ct.App.2000). In *Taylor*, the defendant pled guilty to first-degree theft and falsifying public documents. *Taylor*, 506 N.W.2d at 768. In *Hollinrake*, the defendant pled guilty to falsifying public documents. *Hollinrake*, 608 N.W.2d at 808. In both cases, the courts held the offense was the civil equivalent of conversion. *Hollinrake*, 608 N.W.2d at 808; *Taylor*, 506 N.W.2d at 768. "Conversion is the intentional exercise of control over property 'which so seriously interferes with the right of another to control it that the actor may justly be required to pay ... the full value of the chattel.'" *Hollinrake*, 608 N.W.2d at 808 (quoting Restatement (Second) of Torts § 222A(1) (1964)). In the case before us, the State convicted Bonstetter of first-degree fraudulent practice and forgery. The events surrounding Bonstetter's criminal conduct support a civil claim for conversion. Bonstetter took money from his employer. The issue then is whether the costs of the audit, determining the extent of the taking, are a proper element of damage in a conversion suit.

Generally, expenses of litigation are not recoverable in a civil suit, unless there is specific statutory authority to the contrary. *Taylor*, 506 N.W.2d at 768 (citing 89 C.J.S. *Trover & Conversion* § 175, at 650 (1955)). However, conversion cases present an exception to the general rule.[2] Here, the reasonable and

---

1. Punitive damages and damages for pain, suffering, mental anguish, and loss of consortium are not recoverable. *See* Iowa Code § 910.1(2).

2. To use the general tort concept of conversion to draw a corollary to audit expenses as similar to costs of preparation for a civil suit skews the analysis. In a civil suit, the cost of an audit to determine damages would be as recoverable as the repair estimate charge given as part of the repair process. *See* 25 C.J.S. *Damages* § 48, at 770 (1966) (where property is susceptible of being repaired, the cost of such repairs and replacements as are necessary to restore property to condition in which it was prior to the damage is recoverable). Similarly, the cost of a doctor's initial exam

necessary expenses incurred in recovering the misappropriated funds are a proper element of damage. Iowa Code §§ 910.1, 910.2; *Taylor*, 506 N.W.2d at 768; *Hollinrake*, 608 N.W.2d at 809; 89 C.J.S. *Trover & Conversion* § 174, at 650; 18 Am.Jur.2d *Conversion* § 117, at 231 (1985). Consequently, expenses incurred solely because of the offender's acts are recoverable. *Hollinrake*, 608 N.W.2d at 809 (costs of audit are recoverable if offender's action directly caused the need for the audit); 89 C.J.S. *Trover & Conversion* § 174, at 650.

Bonstetter, over a long period of time, intentionally converted over $422,000 from NEW Cooperative. NEW Cooperative, in turn, was forced to conduct an independent audit to determine the extent of the damage caused by Bonstetter. *See, e.g., Hollinrake*, 608 N.W.2d at 809 (citing *Taylor*, 506 N.W.2d at 769) ("[t]he only means to adequately uncover the extent of the damage was through an audit"); *accord State v. Bausch*, 29 P.3d 989, 991 (Kan.Ct.App. 2001) (audit costs are recoverable as part of restitution order because the audit was a reasonable consequence of the defendant's crime); *State v. Whitaker*, 110 N.M. 486, 495, 797 P.2d 275, 284 (1990) ("[a] reasonably foreseeable consequence of defendant's taking money from the county was that the county would need to conduct a thorough audit to be sure it had uncovered all the defendant's defalcations"); *State v. Holmgren*, 229 Wis.2d 358, 372, 599 N.W.2d 876, 883 (Ct.App.1999) (where audit was done to determine extent of defendant's wrongdoing and to attach specific amounts to the criminal acts, the costs

of the audit were necessitated by defendant's crime).

 Given these facts, common sense seems to dictate an audit was certainly necessary. However, we may not simply infer the necessity and reasonableness of this particular audit. The State must offer some proof to support the inclusion of the audit in the restitution order. In this case, the State failed to provide any such evidence. Bonstetter argues the court erred in including the cost of the audit in the restitution order because there was insufficient evidence to prove the audit fees were necessary, fair, or reasonable. The State offered exhibit three which included the $19,763 audit fee in the calculation of total damages. Over Bonstetter's hearsay objection, the court admitted exhibit three into evidence. Mr. Stanley, a certified public accountant with Schnurr & Company, testified the charge was for "professional fees for work in this case." He further said he did not know whether the audit fees were necessary, fair, and reasonable.

On appeal, Bonstetter seems to argue the audit may not be included in the restitution order because no witness ever uttered the words, "the audit fees are necessary, fair, and reasonable." Though the State must provide evidence to support the conclusion the audit is necessary, fair, and reasonable, it is not necessary for the State to elicit from a witness the precise words, "the audit fees are necessary, fair, and reasonable." Though such an exact statement is not necessary, if present in the record, the statement is some proof to support inclusion of an audit in a restitution order. Here, the record does not reflect such a statement, and we can find no other evidence to support the court's

after an injury to determine the injury and the steps needed to remedy same is recoverable in a civil case. *See Id.* § 47(1), at 760 (recovery for reasonable amount of expenses necessarily incurred by victim as result of a wrong

occasioning a personal injury). This is not similar to attorney fees in a civil case. *See Id.* § 50, at 777 (no recovery as damages of the expenses of litigation and attorney fees unless authorized by statute or contract).

inclusion of the audit as a damage item in the restitution order. There is no evidence NEW Cooperative paid any money in satisfaction for the cost of the audit. All the State offered was proof that a bill was presented from a third party for payment of the costs of the audit. However, presentation to the court of the bill alone is not enough to prove the costs of the audit are necessary, fair, and reasonable. Some other proof is necessary before we can conclude the audit was a reasonable, fair, and necessary element of damage. *See Data Documents, Inc., v. Pottawattamie County*, 604 N.W.2d 611, 616 (Iowa 2000) (party seeking damages bears burden of proving them; if the record is uncertain or speculative as to whether a party has sustained damages, the factfinder must deny recovery); *B–W Acceptance Corp. v. Saluri*, 258 Iowa 489, 497, 139 N.W.2d 399, 404 (1966) (must prove damages with some reasonable certainty).

■ In conclusion, we find the State failed to satisfy its burden of proving a reasonable relationship between Bonstetter's criminal actions and the necessity and reasonableness of this particular audit. *See Mayberry*, 415 N.W.2d at 647. It is the county attorney's responsibility to account for victim rights under our statutes. Iowa Code § 910.3. As such, the State must satisfy its burden of proof when it seeks to recover damages due the victim. Since the record is devoid of any evidence to prove this audit was reasonable and necessary, the inclusion of the costs of the audit as an item of damage was not supported by substantial evidence. *See Mayberry*, 415 N.W.2d at 647. Because we find there was not substantial evidence for the court to determine the costs of the audit were part of the damage caused by Bonstetter's crimes, we reverse and remand for the district court to enter an order consistent with this opinion.

Costs on appeal are taxed to the appellant.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**